CHASE, J. In September, 1899, the plaintiff made to the defendant a written statement of his assets and liabilities, and thereafter purchased goods of the defendant. He failed to pay the full amount agreed to be paid for said goods, and in November, 1900, the defendant made a complaint before the recorder of the city of Elmira, Chemung county, charging the plaintiff with having committed the crime of grand larceny in obtaining by false pretenses the goods so purchased. A warrant was issued, and the plaintiff was arrested at his home in Tompkins county, and taken before the recorder at Elmira, where he was held for examination before the grand jury. The grand jury failed to indict the plaintiff, and this action is brought by the plaintiff against the defendant for malicious prosecution. The place of trial named in the summons is Tompkins county. This motion was made by the defendant to have the place of trial changed from the county of Tompkins to the county of Chemung, and it was granted by the special term. In the defendant's affidavit he names 17 witnesses residing in the county of Chemung, which he claims that it will be necessary for him to call on the trial. In the plaintiff's affidavit he names 25 witnesses residing in the county of Tompkins, which he claims that it will be necessary for him to call on the trial. Without going into a detailed statement of said affidavits, it is very clear that neither the plaintiff nor the defendant will call at the trial the number of witnesses claimed by them in their affidavits. Apart from the formal proof of what occurred before the recorder and the grand jury, the important question on which testimony will necessarily have to be offered on the trial relates to the truthfulness of the written statement of assets and liabilities given by the plaintiff to the defendant in September, 1899. So far as appears by the record, all of the evidence relating to this subject, unless it be as to admissions on the part of the plaintiff, must be obtained from witnesses residing in Tompkins county. The cause of action in part arose in Tompkins county. The plaintiff, on the hearing of the motion, filed a stipulation that will relieve the defendant from the necessity of calling many of the witnesses set forth in his affidavit. After weeding out the unnecessary witnesses claimed by the respective parties, there can be no reasonable doubt that a much larger number of witnesses reside in the county of Tompkins than in the county of Chemung, and that the convenience of witnesses requires that the place of trial should be retained in Tompkins county.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs, to abide the event of the action. All concur.

---

(36 Misc. Rep. 388.)

DEXTER v. PRESS PUB. CO.

(Supreme Court, Special Term, New York County. November, 1901.)

LIBEL—COMPLAINT—DEMURRER.

A complaint alleged that defendant in its newspaper published an article stating that the police had raided a house occupied by plaintiff as a boarding house; that persons in it were gambling; that persons seeking information on which to base the raid were led by plaintiff's

servants into the room where the gambling occurred. *Held* not demurrable as a libel of the house, and not of plaintiff, who occupied it, as it might be inferred that the gambling was carried on with the knowledge of plaintiff.

Action by Olive M. Dexter against the Press Publishing Company. Demurrer to complaint overruled.

The article claimed to be libelous is as follows:

### "Jerome Leads Raid on 'Brace' Game.

"Mr. Baldwin, of the Fifteen, Saw an Advertisement for Man with Money to Invest.

"Justice William Travers Jerome, accompanied by Frank Creighton, a detective of the Committee of Fifteen, and Patrolman William Day, made a raid last night at No. 134 West Seventy-Ninth street (meaning plaintiff's said boarding-house), and arrested five men. They were locked up in the West Sixty-Eighth street station, charged with violating the laws against gambling. The prisoners were Moses P. Phillips, No. 134 West Seventy-Ninth street; George Hill, No. 45 Pulaski street, Brooklyn; William McClellen, No. 101 West Eighty-Ninth street; James Harrison, No. 148 West Ninety-First street; Coe Larkin, No. 209 West Sixty-Sixth street. Phillips was held in $1,500 bail by Justice Jerome, who held court in the West Sixty-Eighth street station. The other prisoners were held in $1,000 bail each.

### "Detective Answered the Adv.

"Although the raid was ordered by William H. Baldwin, Jr., chairman of the Committee of Fifteen, it was not part of the work mapped out by the committee. Mr. Baldwin noticed an advertisement that a business man desired to meet some one with $500 to invest in a lucrative business at No. 134 West Seventy-Ninth street (plaintiff's boarding house meaning). He ordered Detective Creighton to go there. Creighton found that the place was a fashionable boarding house, conducted by Mrs. Olive Dexter (this plaintiff). The maid who answered his ring directed him to rooms occupied by Phillips. Several other men were there. Phillips, according to the story of the detective, said he had a great scheme for making money,—a brace faro game. He asserted that the dealer, by using a box he had, could beat the player with regularity.

### "Creighton Lost $75.

"Creighton was skeptical, and insisted upon being shown that the brace game was sure to win before investing $500 in the enterprise. He played a little while, and lost $75. That convinced him, and he promised to return last night (March 16, 1901, meaning) with the $500. Mr. Baldwin directed the detective to keep the appointment, and Justice Jerome was asked to accompany him. Together they went to the West Sixty-Eighth street station shortly before ten o'clock, and Patrolman Day was assigned to accompany them. When they reached the house (meaning plaintiff's said boarding house) a maid directed them to Phillips' suite, where Phillips and the other men, all fashionably dressed, were waiting. The arrests followed. There was much confusion when the patrol wagon appeared. Mrs. Dexter (meaning plaintiff) and her boarders were astounded, and they protested against the raid, until convinced that the action had not been unwarranted. When searched at the station, the total of $10.16 was found on the prisoners."

Sanders & Gray, for plaintiff.
Bowers & Sands, for defendant.

BLANCHARD, J. This is a demurrer to a complaint in an action for libel. The ground assigned by the defendant is the insufficiency of the complaint to state facts constituting a cause of action. The article claimed to be libelous was published in defendant's newspaper, and is somewhat lengthy. It is set forth in extenso in the

complaint. It states that a raid was made by the police author-
ities of the city of New York through information furnished by a
committee of citizens known as the "Committee of Fifteen" on a
house occupied by the plaintiff, and used by her as a private board-
ing house. It charges that certain persons in the house were guilty
of gambling, and recites the method adopted to secure the infor-
mation which led to the raid, and how persons seeking the informa-
tion were ushered into the room where the gambling occurred by
the servants of the plaintiff. The defendant's contention is that the
article complained of, if libelous, is merely a libel of the house,
and not of the plaintiff, and in the absence of any allegation of in-
nuendo that the article meant that plaintiff knew of the existence
of gambling, and in the absence of allegation of special damage,
that the complaint is defective. Reliance is placed by defendant
for support of the position taken by it on the cases of Kennedy v.
Publishing Co., 41 Hun, 422, and Bosi v. Herald Co., 33 Misc.
Rep. 622, 68 N. Y. Supp. 898, affirmed in 58 App. Div. 619, 68 N.
Y. Supp. 1134. Neither of these cases, however, is in point on
the libel here complained of. In the Bosi Case, the alleged libel
was that plaintiff's restaurant was the resort of anarchists. In the
Kennedy Case, the alleged libel, if any, was that the plaintiff was
the proprietor of a concert hall which was the resort of improper
characters. There was no charge against the individuals who con-
ducted the places, nor any claim that there was anything illegal in
the maintenance of the places. In the present case, however, it
may be fairly inferred from the alleged libelous article by reason
of the statements concerning the connection of plaintiff's servants
with the gambling, that such gambling was conducted on the prem-
ises with plaintiff's knowledge, it being unlawful under our law
either to keep a room where gambling is conducted or to knowingly
let or permit it to be used for such purpose. Pen. Code, § 343.
Giving the complaint the liberal interpretation to which it is en-
titled, and allowing for the fair and reasonable inferences from the
allegations, I am of the opinion that the demurrer must be over-
ruled. The demurrer is overruled, with leave to defendant to an-
swer upon payment of costs.

Demurrer overruled, with leave to defendant to answer upon pay-
ment of costs.